UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


KALIM A.R. MUHAMMAD,

      Plaintiff,

v.                                                                      Case No. 2:14cv592/MW

BRENDA L. BETHEL MUHAMMAD, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause is before the court on plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 (doc. 1).  As set forth in more detail below, plaintiff was twice informed of deficiencies in his complaint and directed to file an amended complaint or risk dismissal of the action.  He failed to do so on both occasions.  Pursuant to Fed. R. Civ. P. 41(b), the court may *sua sponte* dismiss an action for failure to comply with an order of the court.  Based on plaintiff's failure to file an amended complaint, as directed, the undersigned finds dismissal warranted.[1]  Dismissal also is required

---

[1] This is not the first time plaintiff has had a lawsuit dismissed for failure to comply with an order of the court. On February 22, 2010, plaintiff filed his first complaint dealing with the subject matter of the instant action.  *See Muhammad v. Muhammad*, Case No. 2:10cv86-WS-B (S.D. Ala. 2010) (docs. 1, 9, 19).  The case was dismissed for failure to comply with an order of the court after plaintiff repeatedly failed to cure pleading deficiencies.  Plaintiff filed another suit on December 6, 2011.  *See Muhammad v. Bethel-Muhammad*, Case No. 2:11cv690-WS-B (S.D. Ala. 2011) (docs. 1, 37).  That case was dismissed on summary judgment.  Plaintiff filed a third action on January 23, 2013, which

because the court lacks subject matter jurisdiction.

## BACKGROUND AND PROCEDURAL HISTORY

This matter was filed in the United States District Court for the Southern District of Alabama, Northern Division, on December 22, 2014.  *See* doc. 1. Plaintiff's complaint, like the numerous other complaints he has filed, is based on a domestic dispute and related legal proceedings.  Throughout his prolific litigation history, plaintiff has refused to accept adverse rulings, frequently filing motions to transfer and/or recuse.  Once a lawsuit is dismissed, plaintiff files another lawsuit based on the same allegations and naming at least some of the same defendants, accusing those even tangentially involved in his prior litigation of various acts and degrees of misconduct.  Presumably due to the nature of plaintiff's allegations, including claims of judicial misconduct, and repeated requests for recusal and transfer, the Eleventh Circuit Court of Appeals determined it would be in the public interest to assign Judge Mark E. Walker, of the United States District Court for the Northern District of Florida, to sit as a judge of the Southern District of Alabama for purposes of this case.  *See* doc. 15.  On May 18, 2015, the court entered a designation to that effect.  *See* doc. 15.

Prior to Judge Walker's designation, United States Magistrate Judge Sonja F. Bivins, of the Southern District of Alabama, entered an order identifying deficiencies in plaintiff's complaint and requiring him to file an amended complaint.[2]  *See* doc. 4.

---

also was dismissed for failure to comply with an order of the court based on plaintiff's failure to cure pleading deficiencies.  *See Muhammad v. Muhammad*, Case No. 2:13cv30-WS-B (S.D. Ala. 2013) (doc. 1, 36).  In March 2014, the Eleventh Circuit affirmed the district court's dismissal of the 2013 action.  Not to be deterred, plaintiff instituted the instant action in December 2014 by filing a complaint containing many of the deficiencies previously pointed out to him. Clearly, plaintiff is well aware of the consequences of failing to comply with an order of the court, particularly with regard to curing pleading deficiencies.

[2] The case originally was assigned to Magistrate Judge William E. Cassady, who recused himself to avoid the appearance of impropriety.  *See* doc. 3.

Judge Bivins explained that "[t]his is Plaintiff's fourth pro se lawsuit regarding the same general subject matter, namely the alleged breach of an agreement between Plaintiff and Brenda Bethel Muhammad regarding the manner in which disputes relating to their minor daughter would be resolved." *Id.* As Judge Bivins noted, and as indicated above, two of the prior lawsuits were dismissed based on plaintiff's repeated failure to comply with pleading requirements. *See id.* The other case "survived dismissal for pleading deficiencies 'by the very narrowest of margins,'" but ultimately was dismissed on summary judgment. *Id.* at 1-2 (*quoting Muhammad v. Bethel*, Civil Action 13-00030-WS-B, Doc. 31 at pg. 2).

Rather than file an amended complaint as directed by Judge Bivins, plaintiff filed a number of motions seeking, among other things, to have the case reassigned or transferred. Before addressing the outstanding motions, the undersigned reviewed plaintiff's complaint and, like Judge Bivins, found it deficient in a number of respects. In an order entered on July 13, 2015 (doc. 19), the undersigned noted that plaintiff has wholly failed to allege a basis for federal jurisdiction and explained that, although plaintiff invokes 28 U.S.C. § 1332, he has alleged facts that make it plain that complete diversity is lacking. Specifically, plaintiff alleges that he and a number of defendants are citizens of the state of Alabama, a fact that defeats diversity jurisdiction. *See, e.g., Crook-Petite-El v. Bumble Bee Seafoods L.L.C.,* 502 F. App'x 886, 887 (11th Cir. 2012) ("In regard to diversity jurisdiction, pursuant to 28 U.S.C. § 1332, a district court has jurisdiction over all civil actions where (1) the amount in controversy exceeds $75,000, and (2) each defendant is a citizen of a state different from each plaintiff.").

The undersigned also explained that plaintiff has failed to plead facts demonstrating that jurisdiction properly can be invoked under 28 U.S.C.§§ 1331 and

1443, both of which he references in his complaint.  As set forth above, plaintiff's complaint is based on a domestic dispute and related legal proceedings.  To the extent plaintiff can assert a colorable claim based on an alleged breach of a family/custody agreement, such claim would lie exclusively under state law.  With regard to the other claims, although plaintiff has mentioned a number of federal statutes, he has wholly failed to plead facts supporting a viable claim under any of those statutes.  Although he complains about the results reached in his prior cases and seems to allege some sort of conspiracy among and misconduct by most, if not all, of the individuals involved, he has not alleged any specific action taken by any of the named defendants that would sustain a claim for the constitutional violations he has baldly asserted in his complaint.  The undersigned thus found that plaintiff's complaint, even when very liberally construed, does not contain a short and plain statement of any claim showing that plaintiff is entitled to relief against any of the named defendants, *see* Fed. R. Civ. P. 8(a)(2), and directed him to file either a notice of voluntary dismissal or an amended complaint within thirty days.

Although plaintiff continued to file motions, he filed neither a notice of voluntary dismissal nor an amended complaint within the time allowed.  The undersigned therefore entered an order directing plaintiff to show cause within fourteen days why the matter should not be dismissed for failure to prosecute and/or failure to comply with an order of the court (doc. 25).  Attempting to proceed in a cautious manner, the undersigned has allowed  more than fourteen days to transpire, yet plaintiff has not complied with the show cause order.  Plaintiff's complaint thus should be dismissed for failure to comply with an order of the court.  The complaint also should be dismissed for lack of subject matter jurisdiction.

DISCUSSION

I.     Failure to Comply with an Order of the Court

The Eleventh Circuit has recognized that, "[p]ursuant to  Fed.R.Civ.P. 41(b), a district court may *sua sponte* dismiss a plaintiff's action for failure to comply with the rules or any order of the court."  *Owens v. Pinellas Cty. Sheriff's Dept.*, 331 F. App'x 654, 656 (11th Cir. 2009); *see also Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 (11th Cir. 1983).  Unless stated otherwise, such a dismissal is presumed to be with prejudice.  "Dismissal with prejudice," however, "is considered a sanction of last resort, applicable only in extreme circumstances, where there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice."  *Marshall v. Aryan Unlimited Staffing Solution/Faneuil Inc./MacAndrews Holding*, 599 F. App'x 896, 898 (11th Cir. 2015) (internal marks omitted).  Plaintiff's failure to comply with not one, but two, orders directing him to file an amended complaint justifies dismissal of this action, particularly in light of plaintiff's litigation history, which will be discussed in more detail below.  *See id.*

Although the undersigned recommends dismissal without prejudice, it is likely that at least some of plaintiff's claims, to the extent any exist, are now barred by the applicable statutes of limitation and that a dismissal without prejudice will be tantamount to a dismissal with prejudice.  While the undersigned would often endeavor to avoid such a result, in this instance, plaintiff has been repeatedly cautioned and advised - for more than five years - as to his pleading deficiencies and warned that failure to cure the deficiencies would result in the dismissal of his complaint.  Plaintiff nevertheless has persisted in filing pleadings fraught with deficiencies previously identified and then twice failed to file an amended complaint

in this case after being directed to do so and advised that failure to do so would result in dismissal of his complaint.   Under the circumstances, the undersigned has no hesitation in recommending dismissal of plaintiff's complaint and, to the extent such dismissal is deemed to be with prejudice, the undersigned finds that plaintiff has engaged in contumacious conduct and that no lesser sanction will suffice.   *See Kammona v. Onteco Corp.*, 587 F. App'x 575, 582-83 (11th Cir. 2014) (noting that "a district court abuses its discretion when it *sua sponte* dismisses a civil action with prejudice without specifically finding that the plaintiff acted willfully and that a lesser sanction would not have sufficed"); *see also Muhammad v. Muhammad*, 561 F. App'x 834, (11th Cir. 2014) ("A district court may *sua sponte* dismiss an action under Fed.R.Civ.P. 41(b) for failing to comply with a court order.  [D]ismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.  However, where the statute of limitations will bar future litigation of an action dismissed without prejudice, we review the dismissal as if it was with prejudice.") (internal marks and citations omitted); *Owens*, 331 F. App'x at 656 ("We review a Rule 41(b) dismissal without prejudice for abuse of discretion," and "[d]ismissal pursuant to Rule 41(b) upon disregard of an order, especially when the litigant has been forewarned, generally is not an abuse of discretion."); *Tanner v. Neal*, 232 F. App'x 924, 924-25 (11th Cir. 2007) (upholding dismissal without prejudice when the pro se plaintiff failed to file an amended complaint correcting the original complaint's pleading deficiencies); *Jones v. Commonwealth Land Title Ins. Co.*, 459 F. App'x 808, 811 (11th Cir. 2012) (same); *Giles v. Wal-Mart Distrib. Ctr.*, 359 Fed. Appx. 91, 92 (11th Cir. 2009) (upholding dismissal where pro se plaintiff's amended complaint failed to cure the deficiencies of the original).  Thus, being fully aware of the potential effect of dismissal, the undersigned concludes that dismissal

is warranted here.  The sanction is particularly appropriate, and certainly not excessive, given the spate of prior warnings from this court.

II.    Lack of Subject Matter Jurisdiction

The jurisdiction of the federal courts is limited by the scope defined in the Constitution and by statute.  *In re Carter*, 618 F.2d 1093, 1098 (5th Cir. 1980)[3]; *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) ("It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction.  They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress.") (*quoting Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Subject-matter jurisdiction is a threshold inquiry the court is required to consider before addressing the merits of any claim.  *See Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").  The court may raise the issue of subject-matter jurisdiction *sua sponte* at any point in the litigation when a doubt about jurisdiction arises.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (raising the issue of subject matter jurisdiction *sua sponte*).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

A.   Federal Question Jurisdiction

Pursuant to 28 U.S.C. § 1331, federal district courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). "A well-pleaded complaint presents a federal question where it 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001) (*quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28, 103 S. Ct. 2840, 2856, 77 L. Ed. 2d 420 (1983)).

Even a claim that arises under the Constitution, laws, or treaties of the United States may be dismissed for lack of subject-matter jurisdiction if (1) "'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction;' or (2) 'such a claim is wholly insubstantial and frivolous.'" *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir.1998) (*quoting Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946)). A claim is "wholly insubstantial and frivolous" so as to warrant dismissal for lack of subject-matter jurisdiction only "'if the claim has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" *Id*. (*quoting Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992)).

Here, plaintiff has not asserted a plausible claim under federal law. Instead, it appears that plaintiff has engaged in superficial invocation of federal statutes and

constitutional provisions solely for the purposes of obtaining jurisdiction.  Plaintiff's complaint, judged by its own contents, is based on "private religious and contractual obligations between [himself and] Brenda Bethel Muhammad," his former wife and the mother of his child.  Doc. 1 at pg. 4.  Presumably upon separating, plaintiff and Ms. Muhammad entered into an agreement governing "Family business," including "matters of family support, marriage [under religious and secular ideal], custody protocol and even inheritance – by religion and secular support."  *Id.* (brackets in original).  The parties proceeded under the alleged agreement for ten years without incident.  Matters changed, however, when Ms. Muhammad "allegedly conspire[d with some of the other defendants] to subvert the putative religious and private agreement" – according to plaintiff, at least in part to convert their daughter to Christianity.[4]  *Id.*  To that end, plaintiff maintains, Ms. Muhammad invoked the judicial process, which yielded unfavorable results for plaintiff and led to this and the other lawsuits he filed challenging the proceedings and asserting outlandish allegations against everyone involved.

In his complaint, plaintiff purports to "adopt and infer" the causes of action asserted in his previous complaints and appears to contemplate consolidation of the cases.  Plaintiff cannot rely on allegations set forth in a pleading filed in another action to support his claims in this matter.  Moreover, considering that all of the other cases have been dismissed, they cannot be consolidated with each other or with this action.  As to the remaining allegations in plaintiff's complaint, they are rambling and somewhat nonsensical.  For example, plaintiff claims the defendants "burdened [his] right to make and enforce contracts as other White people who may be Christian,

---

[4] According to plaintiff, Ms. Muhammad "was allegedly jealous and decided to get back at [him] for wanting to marry a White Moroccan lady."  *Id.*

Jewish, and Catholic or even another religion" and that the "DHR [Alabama Department of Human Resources] defendants used the alleged void process of [Judge Robert] Armstrong to usurp almost $15,000.00 from the Family . . . [t]hat . . . was for Family business, contractual, religious and family support earmarking." Doc. 1 at pg. 8-9. Plaintiff claims to have been "prohibited by this measure"(which he wholly fails to describe) "to make and enforce many small and medium contractual matters." Doc. 1 at pg. 9.

Plaintiff also complains that Judge William H. Steele, who presided over one of his prior complaints, "failed to do the right thing.  He failed to rule properly in matters that made continuous assaults on [plaintiff's] property and . . . right to Family cohesiveness with the daughter in question."  *Id.*  Plaintiff alleges Judge Steele's actions violated his rights under the Fifth, Sixth, and Seventh Amendments and states he is bringing this action under Rule 60(b) "to assert a de novo investigation into **all** the process from Armstrong's court and **all** the process in the Mobile Court."  *Id.* at pg. 7 (emphasis in original).  Plaintiff asserts Judge Steele deliberately concealed and ignored a conflict of interest, depriving him of a "fair and impartial judge," and "hampered, discarded or otherwise abridged our rights to all the truth and affirmation of the allegations in the Muhammad v. Bethel trilogy."[5]  *Id.* at pg. 8.  Plaintiff claims Judge Steele "based his ruling against us on the alleged spurious bankruptcy scheme of Bethel" and "that even the bankruptcy of Bethel must be called back."  *Id.*

According to plaintiff, "one or more of the defendants tutored Bethel or otherwise gave her directions that filing for bankruptcy would give the Judge Steele a reason to let her go free. The understanding of the alleged conspiracy was that if

---

[5] It is not clear who plaintiff is referring to in addition to himself when using, as he often does, the word "our."

Bethel can get off then all the others would be able to get off 'Scott free'." *Id.*
Plaintiff asserts the alleged conspiracy "not only violates the fair trial, but also the
RICO civil statutes; and may implicate the criminal applications." *Id.* Plaintiff
accuses Judge Steele of dishonesty, impartiality, and improper rulings and states that
"even the credit defendants still attack [his] property interest and character by Judge
Steele's instigation."[6] *Id.* Plaintiff claims Judge Steele deprived him of a jury trial
in "utter violation of 5th, 6th and 7th Amendments rights" and states that he is "beset
with an unfair result of a trial which violated many lawful protocols to insure we
arrive before the jury."[7] *Id.* at 10. Plaintiff alleges his "property and Family was
seized without due process of law" and claims the defendants "directly and or
indirectly violated our 14th Amendment rights" and "***uniquely*** violated our 1st
Amendment rights by direct and indirect means of the judicial system." Doc. 1 at pg.
10.

Plaintiff explains that he is "beset with bouts of outrage and cannot lawfully
take [his] frustration out on the defendants, except through a process that has been
hampered & obstructed by state and federal officials and allegedly their private
accomplices." *Id.* at pg. 9. Plaintiff requests "that a stay be put on all processes in
state and federal bureaucracy that places any further seizures of our persons, travel,
property or other freedoms" and that he is bringing the action "for our right to
purchase a gun permit, without being arrested again by the Sheriff, on the allegedly
void orders of Armstrong." *Id.* at pg. 7. Plaintiff seeks to reopen the prior cases. *Id.*

---

[6] In at least one of his prior cases, plaintiff alleged that the "credit defendants" disseminated negative
information from the DHR defendants and/or the court file. *See Muhammad v. Bethel-Muhammad*, Civil Action 11-
0690-WS-B (S.D. Ala. Oct. 17, 2013) (Doc. 246 at pg. 2).

[7] Judge Steele *sua sponte* dismissed plaintiff's complaint under Fed. R. Civ. P. 41(b) for failure to comply with
an order of the court. *See Muhammad v. Bethel*, Civil Action 10-0086-WS-B (S.D. Ala. June 14, 2010) (Doc. 20). The
basis of Judge Steele's ruling was plaintiff's repeated failure to cure pleading deficiencies. *See id.*

at pg. 11.

Plaintiff accuses Sheriff Huffman of conducting surveillance on him, including placing a "*bug*" on his premises, and having "continued a process that bans our preaching of religion to inmates at Dallas County jail." *Id.* at 12-13.  Plaintiff accuses Paul V. Russell,[8] Sheriff Huffman, and Judge Armstrong of "belong[ing] to a secret group that intends to keep the Negro male[and Latino] male from achieving their true potential" in an effort to preserve the "White race."  *Id.* at pg. 13.   According to plaintiff, "this is their protocol from secret meetings and at country club gatherings, which excludes Negroes from ever discovering the alleged plot.  We believe this is allegedly some sordid protocol to message [*sic*] the White Supremacy ego and that the institution of it serves to keep the minority[men] population from showing up at the polls."  *Id.*

Plaintiff alleges a vast governmental conspiracy to suppress minorities, "akin to slavery."  *Id.* at pp. 13-14.  He asserts the following causes of action:

> Count 1: We assert the count of violation of fair trial. We assert Judge Steele and the others were complicit in insuring that we did not win. We assert all the process or at least most of the process of Judge Steele is void. The underlying factor of this count is that all of the favorable judgments are to be taken from the defendants, as a matter of law.
>
> Count 2: We assert **nullity**, in conjunct. with **outrageous conduct** claims against the defendants. We assert all the favors of the Judge Steele are again to be cancelled by the demands of nullity and outrageous conduct of the defendants.

---

[8] Although plaintiff does not make this clear, Mr. Russell is an attorney who represented his former wife in the underlying domestic dispute.  *See Muhammad v. Bethel-Muhammad, et al.*, Civil Action 11-0690-WS-B (S.D. Ala. October 7, 2013) (Doc. 246 at pg. 2).

Count 3: Violation of l4th Amd. rights to due process/state civil harassment

Count 4: Violation of Religious Freedom & Restoration Act

Count 5: Violation of FAA in conjunction with Alabama Const §95

Count 6: Violation of §§ 455 and 144

Count 7: Violation of §§ 1981 in conjunction with 1982-86

Count 8: Viol. of federal civil RICO in conjunction with Al. Const. §7

Count 9: Violation of civil 18 U.S.C. 5242 in conj. with Al. Const. §5

Count I0: Violation of 14th Amendment Equal Prot. and Al. Const. §l0

Count ll: Defamation in conjunction with outrage under state law

Count 12: Conversion in conjunction with 4th and 5th Amendment

Count 13: Violation of Al Const. §11 in conjunction with assumpsit

Count 14: Viol. of Al Const. §26 in conj. with 14th Amendment contract

Count 15: Violation of Al Const. §25 in conjunction with 1st Amendment

Count 16: Freedom of Information Act in conjunction with FCRP Act

Count 17: Violation of FDCPA in conjunct. with common law defamation

Count 18: Viol. 42U.S.C. § 2000(a-d). in conj. w/abuse of federal process

Count 19: Viol. of lst Am. religious freedom in conj. with privacy rights

Count 20: Viol. of 1st Am. Petition and Al. Const. §13 redress.

Count 21: Viol. of Art. 1§10 in/conj. Al, Const. §100

Count 22: Viol. Al. Const. §279 in/conj. A1. Const. §3

Although plaintiff names sixteen defendants and references "others to be named," he wholly fails to specify which of the twenty-two counts are asserted against which of the sixteen defendants except with respect to two counts in which he specifically references Judge Steele. Doc. 1 at pg. 28. Similarly, although plaintiff invokes a number of federal statutory and constitutional provisions by name or self-styled abbreviation, he has wholly failed to allege facts that would support a claim under any of those provisions.  And he has not recited the elements of any of the twenty-two causes of action he asserts or specified which factual assertions pertain to which counts.  He also impermissibly incorporates pleadings filed in other actions. In short, plaintiff rambles on for thirty-one pages alleging facts, often disjointed, that make it plain he has no arguable claim under federal law.

As set forth in Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*  To avoid dismissal, "[a] Complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1170 (11th Cir. 2009) (internal marks omitted).  Plaintiff's complaint wholly fails to comply with federal pleading requirements despite the fact that he has been repeatedly advised – for more than five years – as to his pleading deficiencies, warned that such deficiencies would result in dismissal of his complaint, and given explicit instructions as to the manner in which to cure the deficiencies.

In 2010, for example, Judge Steele provided plaintiff detailed guidance with regard to preparing an adequate pleading, recommending that plaintiff review the federal court pleading requirements, as well as the rules and cases cited in his order, and explained that, in doing so, plaintiff would

> discover that successful plaintiffs present crisp complaints
> that: clearly allege in brief numbered paragraphs necessary
> facts as to what each defendant did (not character attacks
> on the defendants and not irrelevant ramblings); clearly list
> each legal claim presented, each under a separate heading
> called a "Count" (not laundry lists of unamplified legal
> terms and case citations); clearly state under each count
> which defendants are defendants under that count, clearly
> identify the factual numbered paragraphs that apply to that
> count, and clearly explain how the legal right implicated by
> that count was violated; and clearly articulate the relief
> requested.  Other attributes of adequate pleading exist, but
> adherence to these would vastly improve – and shorten –

the plaintiff's current pleading.

*Muhammad v. Bethel, et al.*, Civil Action 10-0086-WS-B (S.D. Ala. June 14, 2010) (doc. 20 at pp. 5-6). Judge Steele also warned plaintiff that *pro se* litigants, such as himself, "shall be bound by and comply with all local rules of this Court, and the Federal Rules of Civil . . . Procedure, unless otherwise excused from operation of the rules by court order." *Id.* at pg. 4 (citing Local Rule 83.9(b)). Judge Steele explained that "'both the Supreme Court and [the Eleventh Circuit] have concluded that a defendant's *pro se* status in civil litigation generally will not excuse mistakes he makes regarding procedural rules.'" *Id.* (*quoting Nelson v. Barden*, 145 F. App'x 303, 311 n.10 (11th Cir. 2005)). "Even in the case of pro se litigants . . . a court [does not have] license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action . . . ." *GJR Inv., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2007)).

The Eleventh Circuit made similar observations more recently when affirming the district court's dismissal of plaintiff's complaint based on plaintiff's failure to "obey the court's order to produce a pleading that complied with federal standards." *Muhammad*, 561 F. App'x at 836. The court noted that although plaintiff "is entitled to some flexibility as a pro se litigant, he cannot circumvent the Federal Rules of Civil Procedure by virtue of his status." *Id.* at 837. The court held that plaintiff's "complaint and amended complaint lacked a short and plain statement of the claims, as required by Fed. R. Civ. P. 8(a)(2)," and that plaintiff "failed to comply with a court order, which allows for dismissal under the Rules." *Id.* "These mistakes were procedural in nature, and we generally do not excuse pro se litigants' procedural mistakes." *Id.*

Despite these and numerous other helpful judicial admonitions, plaintiff has persisted in filing pleadings with the same deficiencies repeatedly pointed out to him. As Judge Steele observed, "[t]he Court has provided the plaintiff multiple opportunities to submit a complaint minimally compliant with the governing rules of pleading, and he has instead offered versions each successively more objectionable than its predecessors." *Muhammad v. Bethel, et al.*, Civil Action 10-0086-WS-B (S.D. Ala. June 14, 2010) (doc. 20 at pg. 4).  Considering that the instant complaint contains the very deficiencies previously pointed out to plaintiff, as well as the fact that plaintiff has had more than ample opportunity to plead a viable cause of action, it is abundantly clear that plaintiff has not – and cannot – state a plausible federal claim.  The undersigned recognizes that under limited instances a litigant can challenge the results of a federal proceeding in a Rule 60(b) motion and/or appeal.[9] But there simply is no cause of action, federal or otherwise, for the events of which plaintiff complains.  The undersigned thus finds plaintiff's claims wholly insubstantial and frivolous and can conclude only that plaintiff has identified supposed federal Constitutional and statutory provisions in a futile and transparent attempt to obtain jurisdiction.

Even if plaintiff had pled a viable claim, to the extent he challenges the underlying domestic matter, this court would be precluded from adjudicating his claims pursuant to the *Rooker-Feldman* doctrine,[10] which bars lower federal courts from exercising appellate jurisdiction over final state-court judgments.  *See, e.g.,*

---

[9] Rule 60(b) provides for relief from a final judgment, order, or proceeding – by motion filed in the challenged action.  A dissatisfied litigant cannot simply file endless new lawsuits to challenge the results reached in prior civil actions.

[10] The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82, 103 S. Ct. 1303, 1311-15, 75 L. Ed. 2d 206 (1983).

*Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009).  In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284,125 S. Ct. 1517, 1521-22 (2005), the Supreme Court cautioned against broadly construing *Rooker-Feldman* and held the doctrine should be confined only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   *Rooker-Feldman*'s reach extends to federal claims raised by the state-court loser that are deemed to be "inextricably intertwined" with the state court judgment such as (1) where the success of the federal claim would "effectively nullify" the state court judgment; and (2) where the federal claim "succeeds only to the extent that the state court wrongly decided the issues."  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (internal marks omitted).  Plaintiff is attempting to do here precisely what the *Rooker-Feldman* doctrine, even construed in the narrowest sense, was designed to prevent.

In addition, the judges plaintiff has sued – Judge Steele, Judge Armstrong, and Judge Pettway – are entitled to judicial immunity.  It is well settled that a judge acting in his or her judicial capacity is absolutely immune from suit for monetary damages.  *See Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526-27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); *Sibley v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005).  Immunity may be overcome only (1) where the judge has not acted within his judicial capacity, or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction.  *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d

331 (1978); *Mireles*, 502 U.S. at 11; *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).  "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley*, 437 F.3d at 1070 (*citing Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983)).  An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which he presides.  *Dykes v. Hosemann*, 776 F.2d 942, 946-47 (11th Cir. 1985) (citations omitted).  The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power."  48A C.J.S. Judges § 86.  Where a court has subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.  *Harper v. Merckle*, 638 F.2d 848, 857 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction).

The conduct of which plaintiff complains, at least to the extent his allegations are decipherable, falls squarely within judicial immunity.  The judges thus are absolutely immune from this suit to the extent plaintiff seeks monetary damages against them for action taken in their official capacities.

Plaintiff's claims against state agencies and defendants acting on behalf of the State of Alabama also are barred.  As the Eleventh Circuit explained, "[t]he Eleventh Amendment protects a State from being sued in federal court without the State's consent."  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  "As a result,

parties with claims against a non-consenting State must resort to the State's own courts." *Id.* "The Eleventh Amendment is 'a recognition that states, though part of a union, retain attributes of sovereignty, including immunity from being compelled to appear in the courts of another sovereign against their will.'" *Id.* (*quoting McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001)). A suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45, 58 (1989). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit brought by a private individual against a state in federal court. *Fed. Maritime Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 122 S. Ct. 1864 (2002); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Gamble v. Fla. Dept. of Health and Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). Plaintiff's claims against the state agency defendants and defendants acting on behalf of the State of Alabama plainly are barred.

To the extent plaintiff has sued government employees in their individual capacities, such defendants are entitled to qualified immunity. The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Conn v. Gabbert*, 526 U.S. 286, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (*quoting*

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982));
*Powell v. Ga. Dep't of Human Res.*, 114 F.3d 1074 (11th Cir. 1998). Qualified
immunity seeks to ensure that individuals can reasonably anticipate when their
conduct may give rise to liability, and hence, liability only attaches if the contours of
the right allegedly violated are sufficiently clear that a reasonable person would
understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260
(*citing United States v. Lanier*, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432
(1997)).

In order to receive qualified immunity, the public official "must first prove that
he was acting within the scope of his discretionary authority when the allegedly
wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)
(internal marks omitted). "Once the defendant establishes that he was acting within
his discretionary authority, the burden shifts to the plaintiff to show that qualified
immunity is not appropriate." *Id.* The Supreme Court has established a two-pronged
test for evaluating a claim of qualified immunity: (1) whether a constitutional right
has been violated on the facts alleged; and (2) whether the right was "clearly
established." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272
(2001). The court may exercise its sound discretion in deciding which of the two
prongs should be addressed first in light of the circumstances in the particular case
at hand. *Pearson v. Callahan*, 555 U.S. 223, 236-37, 129 S. Ct. 808, 818, 172 L. Ed.
2d 565 (2009). The court may grant qualified immunity if the plaintiff fails to carry
his burden on either of the two prongs. *See, e.g., id.* at 243-44 (evaluating only
*Saucier's* second prong and holding that law enforcement officers were entitled to
qualified immunity because the unlawfulness of their conduct was not clearly
established).

The second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Marsh v. Butler Cty.*, 268 F.3d 1014, 1031-33 (11th Cir. 2001) (*en banc*), *abrogated on other grounds, Twombly*, 550 U.S. 544. The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. *Hope v. Pelzer*, 122 U.S. at 739; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. *Hope*, 536 U.S. at 731. Instead, the law merely must give defendants "fair warning" that their actions are unconstitutional. *Id.* In light of pre-existing law, the unlawfulness must be apparent. *Id.*; *Creighton*, 483 U.S. at 640.

In the Eleventh Circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and the highest court of the state in which the case arose. *See e.g., Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4. (11th Cir. 1997) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."); *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) ("We have held that decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law.").

Although not much in plaintiff's complaint is clear, it is apparent that the conduct of which he complains occurred within the scope of the defendants'

discretionary authority.  It also is apparent that he has not pled that any defendant has violated a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  Qualified immunity thus shields the government employees from claims against them in their individual capacities.

B.    Diversity Jurisdiction

Not only has plaintiff failed to demonstrate federal question jurisdiction, but he has by his own words made it clear that diversity jurisdiction is lacking.  Diversity jurisdiction requires that the plaintiff and each defendant be citizens of different states and that the amount in controversy exceed $75,000.  28 U.S.C. § 1332(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005).  Here, plaintiff has alleged facts demonstrating that complete diversity does not exist.  Specifically, he has indicated that he and all of the defendants except the credit agency defendants are citizens of the State of Alabama, thereby defeating any claim of diversity jurisdiction.[11]  The United States District Court does not have, and could not have, jurisdiction over the claims advanced by plaintiff.

Accordingly, it is respectfully RECOMMENDED:

1.  That this case be DISMISSED for failure to comply with an order of the court and for lack of subject matter jurisdiction.

2.   That any outstanding motions be DENIED.

3.  That the clerk be directed to close the file.

---

[11] In addition to the deficiencies cited above, plaintiff has improperly joined claims based on events that do not arise "out of the same transaction, occurrence, or series of transactions or occurrences" and do not implicate questions of law or fact common to all defendants.  *See* Fed. R. Civ. P. 20(a)(2).

At Pensacola, Florida this 19th day of October, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**